IN THE UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF TEXAS
                          DALLAS DIVISION

ROBERT KUNKEL,                §
                              §
                  Plaintiff,  §
                              §  Civil Action No. 3:05-CV-0381-D
VS.                           §
                              §
D.R. HORTON - TEXAS, LTD.,    §
et al.,                       §
                              §
                  Defendants. §

                     MEMORANDUM OPINION
                        AND ORDER

     In this action by plaintiff Robert Kunkel ("Kunkel") against

defendants D. R. Horton - Texas, Ltd. and D. R. Horton, Inc.[1]

(collectively "Horton"),[2] defendants move to stay the proceedings

and compel arbitration.  For the reasons that follow, the court

concludes that the agreement to arbitrate may be illusory, but that

the court cannot resolve this question without conducting an

evidentiary hearing because the document that contains the

arbitration agreement is ambiguous.  The court therefore denies the

motion.


                                 I


     This is a removed action in which Kunkel alleges that Horton

discharged, discriminated, and retaliated against him, in violation

_____

     [1]Defendants assert that D. R. Horton Custom Homes, the third
named defendant, does not exist.  Kunkel does not dispute this
assertion.

     [2]The court acknowledges that D. R. Horton - Texas, Ltd., a
nonsignatory, was Kunkel's employer, but the court need not decide
the significance of this issue in today's decision.

of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C.
§ 2601, *et seq.* Horton moves under the Federal Arbitration Act
("FAA"), 9 U.S.C. § 1 *et. seq.*, to compel arbitration and to stay
these proceedings.  It maintains that Kunkel's FMLA claim is
subject to binding arbitration based on a provision in a form
entitled, "Acknowledgment of Understanding Personnel Policy"
("Acknowledgment").  Horton, a home builder, hired Kunkel to work
as a builder in Horton's Dallas/Fort Worth home market.  In May
1999 Kunkel signed the Acknowledgment as part of his initial
employment packet.  He signed an identical Acknowledgment form in
June 2000.  The Acknowledgment contains five paragraphs, which are
followed by spaces for the employee's signature, name, and date.[3]

> [1] I acknowledge having received and read my
> personal copy of the D. R. Horton, Inc.
> Personnel Policy Guidelines.  I understand
> that the policies and procedures contained
> within this Employee Handbook are subject to
> revision and/or revocation at any time and for
> any reason deemed necessary by management.  I
> further understand that I am personally
> responsible for remaining familiar with the
> contents of this manual and all other posted
> and/or published Company policies and
> procedures.
>
> [2] By signing below, I acknowledge that I
> understand that I have a right to terminate my
> employment at any time, with or without
> notice, for any reason, with or without cause,
> and the Company has the same right.  I further
> understand that the Company reserves the right

---

[3]For ease of reference later in this opinion, the court has
editorially supplied paragraph numbers in the brackets that precede
each paragraph.

- 2 -

to alter, amend, modify or terminate any
benefits or provisions contained in any plans,
policies or procedures at any time, with or
without notice to me, and that neither this
document, nor any other plan, policy or
procedure, creates a contract of employment
between the Company and me.

[3] I acknowledge and understand that any
property or areas used solely by me as an
employee, and any computer or other equipment
used in conjunction with my employment, may be
subject to search or inspection without my
consent. Further, as a condition of my
employment, I hereby expressly authorize and
consent to ac[c]ess by authorized company
personnel. The Company reserves the right to
search any property or area used solely by an
employee without the employee's consent.

[4] In the event there is any dispute arising
out of your employment with D. R. Horton, Inc.
or the termination thereof, which the parties
are unable to resolve through direct
discussion or mediation, regardless of the
kind or type of dispute, you and D. R. Horton,
Inc. agree to submit all such disputes
exclusively to final and binding arbitration
pursuant to the provisions of the Federal
Arbitration Act, or, if inapplicable, any
applicable state arbitration statu[t]e, or any
successor or replacement statutes, upon a
request submitted in writing to the Legal
Department in the Corporate office within one
(1) year of the date when the dispute first
arose, or within one (1) year of the
termination of employment, whichever occurs
first. Any failure to request arbitration
timely shall constitute a waiver of all rights
to raise any claims in any forum arising out
of any dispute that was subject to
arbitration. The limitations period set forth
in this paragraph shall not be subject to
tolling, equitable or otherwise.

[5] I agree, as shown by my signature, to
accept, endorse and abide by all Company
policies and procedures and agree to arbitrate

any disputes.

Ds. App. 1.[4]

Kunkel opposes Horton's motion, contending, *inter alia*, that the agreement to arbitrate contained in the Acknowledgment is illusory, and therefore unenforceable, because Horton retained the right unilaterally to alter, amend, modify, or terminate the arbitration provision.[5]

II

"The FAA expresses a strong national policy favoring arbitration of disputes, and all doubts concerning the arbitrability of claims should be resolved in favor of arbitration." *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002). "The purpose of the FAA is to give arbitration agreements the same force and effect as other contracts—no more and no less." *Wash. Mut. Fin. Group, L.L.C. v. Bailey*, 364 F.3d 260, 264 (5th Cir. 2004) (citing 9 U.S.C. § 2). "Courts adjudicating a motion to compel arbitration engage in a two-step process." *Hadnot v. Bay, Ltd.*, 344 F.3d 474, 476 (5th Cir. 2003).

_____

[4]The Acknowledgment does not appear to have been written by a lawyer. The employee is variously referred to in the first, second, and third persons, and there are some spelling errors.

[5]Kunkel opposes Horton's motion on other grounds. The court need not reach them, however, because, to be entitled to the relief it seeks, Horton must establish that the Acknowledgment requires Kunkel to arbitrate his claim. Since it cannot do so on the present record, it is not entitled to compel arbitration and to stay the case, regardless whether Kunkel's other arguments have or do not have merit.

"First, the court must determine whether the parties agreed to arbitrate the dispute[ ]" by applying "the contract law of the particular state that governs the agreement." *Wash. Mut.*, 364 F.3d at 263-64.  Both parties rely on Texas law in this respect.  "This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 537 (5th Cir. 2003) (quoting *Webb v. Investacorp, Inc*., 89 F.3d 252, 258 "[T]he 'federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties' or to 'the determination of who is bound' by the arbitration agreement." *Id.* (quoting *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073-74 (5th Cir. 2002)). "Once the court finds that the parties agreed to arbitrate, it must consider whether any federal statute or policy renders the claims nonarbitrable." *Wash. Mut.*, 364 F.3d at 263.

III

The court reaches today only the threshold question whether there is a valid agreement between Kunkel and Horton to arbitrate.

A

Kunkel contends that he and Horton did not enter into a valid agreement because the alleged agreement is illusory.  He maintains that Horton reserved the unilateral right to alter, amend, modify,

or terminate the agreement at any time, with or without notice, and that this right is not restricted to prospective cancellation or changes.

Horton counters that the agreement is not illusory because the clause on which Kunkel relies is a stand-alone paragraph that expresses the parties' intent to arbitrate and contains no language retaining a right to modify the agreement.  It maintains that Kunkel is relying erroneously on an earlier paragraph in the Acknowledgment that reaffirms Kunkel's status as an at-will employee, and that only in this respect does Horton reserve the right to alter plans, policies, or procedures.  Horton posits that the reservation-of-rights clause does not refer to the arbitration agreement that follows or to any contractual agreement, the agreement exists solely on that page and is not contained in the Employee Handbook or in any other policy manifestation, and the final paragraph of the Acknowledgment separately identifies Kunkel's agreement to abide by all company policies and procedures and to arbitrate any disputes.  Horton argues that a fair interpretation of the contract requires that the reservation-of-rights clause be read exclusive of the parties' contractual agreement to arbitrate.

B

An illusory promise is one that fails to bind the promisor, who retains the right to discontinue performance.  *Light v. Centel*

- 6 -

*Cellular Co. of Tex.*, 883 S.W.2d 642, 645 (Tex. 1994). "When illusory promises are all that support a purported bilateral contract, there is no contract." *Id.*

The Texas Supreme Court has not decided whether an arbitration agreement is illusory when a party reserves the unilateral right to alter or terminate the agreement at any time, with or without notice. *See Nasir v. Air Liquide Am. Corp.*, 2004 WL 2236658, at *2 (N.D. Tex. Oct. 1, 2004) (Sanders, J.). The issue was before the Texas Supreme Court in *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223 (Tex. 2003), where it "note[d] that most courts that have considered the issue have held that, if a party retains the unilateral, unrestricted right to terminate the arbitration agreement, it is illusory." *Id.* at 230 n.2 (collecting cases). The court did not decide the issue, however, because it found the agreement ambiguous and remanded. *See id.* at 229-32. "The court must therefore make an *Erie*-guess as to how the Texas Supreme Court would decide the question." *Nutmeg Ins. Co. v. Pro-Line Corp.*, 836 F. Supp. 385, 388 (N.D. Tex. 1993) (Fitzwater, J.). When making such an *Erie* guess, a federal court is bound by an intermediate state appellate court decision unless "convinced by other persuasive data that the highest court of the state would decide otherwise." *First Nat'l Bank of Durant v. Trans Terra Corp. Int'l*, 142 F.3d 802, 809 (5th Cir. 1998) (internal quotations and footnote omitted).

A number of federal district courts have followed the dicta in
*Davidson* and held that the unilateral ability to alter, amend, or
terminate an arbitration agreement renders that agreement illusory
and unenforceable.  *See Kai v. Asia Source, Inc.*, 2004 WL 2545006,
at *1 (N.D. Tex. Nov. 4, 2004) (Lynn, J.); *Nasir*, 2004 WL 2236658,
at *2; *Harmon v. Hartman Mgmt., L.P.*, 2004 WL 1936211, at *3 (S.D.
Tex. Aug. 24, 2004).  In *Nasir* Judge Sanders analyzed *Davidson* and
concluded that, "in addressing the issue, the Texas Supreme Court
would rule that where an employer retains the unilateral,
unrestricted right to modify or terminate its arbitration policy,
any agreement to arbitrate under such terms is illusory."  *Nasir*,
2004 WL 2236658, at *2.  Furthermore, at least one Texas appellate
court has cited *Davidson* for the rule that, "if an employer retains
the unilateral right to modify an arbitration plan, the
consideration for the arbitration agreement is illusory."  *In re
Dillard Dep't Stores, Inc*, ___ S.W.3d ___, 2005 WL 552422, at *3
(Tex. App. 2005, pet. filed); *see also In re C & H News Co.*, 133
S.W.3d 642, 647 (Tex. App. 2003, no pet.) (holding before *Davidson*
that employer's right unilaterally to amend arbitration agreement
made consideration for agreement illusory); *Tenet Healthcare Ltd.
v. Cooper*, 960 S.W.2d 386, 388-89 (Tex. App. 1998, pet. dism'd
w.o.j.) (holding before *Davidson* that employer's right unilaterally
to amend or rescind arbitration agreement made agreement illusory).
This court follows the weight of authority and the *Davidson* dicta

- 8 -

and concludes that the Texas Supreme Court would hold that, where an employer retains the unilateral, unrestricted right to modify or terminate an arbitration agreement, the agreement is illusory.

C

The court now considers whether Horton retained the unilateral, unrestricted right to modify or terminate the arbitration agreement. As the court will explain, it concludes that the Acknowledgment is ambiguous in this respect.

Under Texas law, this court must

> first determine whether it is possible to enforce the contract as written, without resort to parol evidence. Deciding whether a contract is ambiguous is a question of law for the court. In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. To achieve this objective, [the court] must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument. A contract is unambiguous if it can be given a definite or certain legal meaning. On the other hand, if the contract is subject to two or more reasonable interpretations after applying the pertinent rules of construction, the contract is ambiguous, creating a fact issue on the parties' intent.

*Davidson*, 128 S.W.3d at 229 (citations omitted).

One reasonable interpretation of the Acknowledgment renders the agreement to arbitrate illusory. The Acknowledgment refers, in

relevant part, to the following as governing the employment relationship between Horton and Kunkel: Horton's Personnel Policy Guidelines, Acknowledgment ¶ 1; an Employee Handbook (which may also be called a "manual"), which contains policies and procedures, *id.;* unspecified posted and/or published Company policies and procedures, *id.;* and unspecified "benefits or provisions contained in any plans, policies or procedures[,]" *id.* ¶ 2.    The Acknowledgment form itself is referred to as a "document" that——for purposes of disavowing any intent to create an employment contract——is equated with "any other plan, policy or procedure." *See id.* Paragraph 2 of the Acknowledgment reserves Horton's "right to alter, amend, modify or terminate *any* benefits or *provisions* contained in any plans, policies or *procedures* at any time, with or without notice to me[.]"    *Id.* (emphasis added).    Paragraph 4 contains the parties' agreement to arbitrate any dispute that arises out of Kunkel's employment with Horton, or the termination thereof, that the parties are unable to resolve directly through discussion or mediation.   *Id.* ¶ 4.

It is reasonable to interpret the Acknowledgment to include within the procedures that Horton can alter, amend, modify, or terminate the arbitration process set out in ¶ 4.    The Acknowledgment speaks four times of "procedures."    It refers to procedures contained within the Employee Handbook, *id.* ¶ 1, all other posted and/or published Company procedures, *id.,* any

procedures, *id*. ¶ 2, and all Company procedures, *id*. ¶ 5.  This use of the term "procedures" evinces an intent to include all methods that regulate the employment relationship.  The arbitration clause in ¶ 4 could be viewed as a method that regulates the employment relationship because it applies, not only to disputes concerning termination, but to any dispute arising out of an employee's current employment.  Arbitration cannot be a "procedure" for one type of dispute (involving a current employee) but not for another (involving a terminated employee).  Paragraph 1 of the Acknowledgment states that "the polices and procedures contained within this Employee Handbook are subject to revision and/or revocation at any time and for any reason deemed necessary by management." *Id.* ¶ 1.  Unlike ¶ 1, which refers to "this Employee Handbook," ¶ 2 refers more generally to "*any* . . . provisions contained in *any* plans, policies or procedures[.]" *Id.* ¶ 2 (emphasis added).  Thus examining the Acknowledgment as a whole, ¶ 2 could be read to apply to all of Horton's procedures, including arbitration.[6]

Another reasonable interpretation of the Acknowledgment, however, favors Horton's position.  Horton contends that the

_____

[6]Horton relies on *Patterson v. Tenet Healthcare, Inc.*, 113 F.3d 832 (8th Cir. 1997), a case applying Missouri law, as an example of a decision that upholds an allegedly illusory arbitration agreement.  Its reliance on this case is misplaced, however, because in 1998 a Texas appellate court concluded that the result in *Patterson* was "contrary to the substantive law of Texas." *Tenet Healthcare*, 960 S.W.2d at 389.

arbitration agreement in ¶ 4 is intended to be a stand-alone provision, read independently of the reservation-of-rights clause in ¶ 2.  This interpretation is supported by the structure of the Acknowledgment.  Paragraph 4 is separated from ¶ 2 by a paragraph that authorizes Horton to search the employee's personal property without consent.  And the arbitration agreement in ¶ 4 appears in a paragraph that is devoted completely to the subject of arbitration and contains no right of modification.

Additionally, Horton's right to "alter, amend, modify or terminate any benefits or provisions contained in any plans, policies or procedures at any time, with or without notice to me" is part of this sentence:

> I further understand that the Company reserves the right to alter, amend, modify or terminate any benefits or provisions contained in any plans, policies or procedures at any time, with or without notice to me, and that neither this document, nor any other plan, policy or procedure, creates a contract of employment between the Company and me.

Acknowledgment ¶ 2.  Given the full content of the sentence, and of its placement in a paragraph that addresses the employee's at-will employment status, the Acknowledgment can reasonably be interpreted as establishing the terminable nature of the employment relationship, as distinguished from the arbitration clause.

Finally, ¶ 5 of the Acknowledgment reiterates the employee's commitment "to arbitrate any disputes."  Acknowledgment ¶ 5.

Because the Acknowledgment is ambiguous, the court cannot say

- 12 -

without further fact finding that the agreement to arbitrate is not illusory.   Under Texas law, the court is required to conduct an evidentiary hearing for the purpose of making this decision.   *See Davidson*, 128 S.W.3d at 231-32 (addressing evidentiary hearing procedure).   Pending this determination, the court must therefore deny Horton's motion to compel arbitration and stay this case.

*     *     *

Horton's May 17, 2005 motion to compel arbitration and stay court proceedings is denied.

**SO ORDERED.**

August 3, 2005.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE